IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROY CHAMPION,<br><br>Plaintiff,<br><br>v.<br><br>BEMIS COMPANY, INC., WILLIAM F. AUSTEN, KATHERINE C. DOYLE, ADELE M. GULFO, DAVID S. HAFFNER, TIMOTHY M. MANGANELLO, ARUN NAYAR, GUILLERMO NOVO, MARRAN H. OGILVIE, DAVID T. SZCZUPAK, HOLLY A. VAN DEURSEN, PHILIP G. WEAVER, GEORGE W. WURTZ III, and ROBERT H. YANKER, ,<br><br>Defendants. | CASE NO.: 19-3602<br><br>COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |

Plaintiff Roy Champion ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.  Plaintiff, a stockholder of Bemis Company, Inc. ("Bemis" or the "Company") brings this action against the members of Bemis' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, and 17 C.F.R. § 240.14a-9, arising out of their attempt to merge the Company with Amcor Limited ("Amcor").

2.  On August 6, 2018, Amcor and the Company announced they had entered into a definitive agreement and plan of merger ("Merger Agreement"), by which Company would merge

into Amcor through Amcor's wholly owned subsidiary Amcor plc ("New Amcor") and Arctic Corp. ("Merger Sub") (the "Proposed Transaction"). Under the terms of the Merger Agreement, Bemis stockholders will receive 5.1 shares of New Amcor common stock in exchange for each share of Bemis common stock (the "Merger Consideration"). At the time of the announcement, the Proposed Transaction was valued at approximately $57.75 per share of Bemis common stock. Bemis stockholders will own approximately 29% of the combined company following the Proposed Transaction.

3. On March 27, 2019, Bemis filed a Definitive Proxy Statement on Form DEFM14A (the "Proxy") with the United States Securities & Exchange Commission. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding the background of the process leading up to the Proposed Transaction, the financial analysis performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"); the potential conflicts of interest faced by Goldman in providing a fairness opinion blessing the Proposed Transaction, and the potential conflicts of interest faced by Bemis management and directors in approving the merger with Amcor.

4. Without additional information the Proxy is materially misleading in violation of federal securities laws.

5. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6. The Proxy states that the stockholder vote to approve the Proposed Transaction is scheduled for May 2, 2019 (the "Stockholder Vote"). Under the Merger Agreement, following a successful Stockholder Vote, the Proposed Transaction will be consummated.

7. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the Stockholder Vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of Bemis common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, as the Company's common stock is listed and traded on the New York Stock Exchange within this District; and (ii) Defendants have received substantial compensation in this District by accessing the capital markets active in this District.

3

**PARTIES AND RELEVANT NON-PARTIES**

11. Plaintiff is, and has been at all relevant times, the owner of Bemis common stock.

12. Defendant Bemis is a corporation organized and existing under the laws of the state of Missouri. It maintains principal executive offices at 2301 Industrial Drive, Neenah, Wisconsin, 54956. Bemis common stock is listed for trading on the New York Stock Exchange under the ticker symbol "BMS."

13. Defendant William F. Austen ("Austen") has served as the President, Chief Executive Officer ("CEO"), and as a director of the Company since 2014.

14. Defendant Katherine C. Doyle ("Doyle") has served as a director of the Company since 2017.

15. Defendant Adele M. Gulfo ("Gulfo") has served as a director of the Company since 2015.

16. Defendant David S. Haffner ("Haffner") has served as a director of the Company since 2004.

17. Defendant Timothy M. Manganello ("Manganello") has served as a director of the Company since 2004.

18. Defendant Arun Nayar ("Nayar") has served as a director of the Company since 2015.

19. Defendant Guillermo Novo ("Novo") has served as a director of the Company since 2018.

20. Defendant Marran H. Ogilvie ("Ogilvie") has served as a director of the Company since 2018.

21. Defendant David T. Szczupak ("Szczupak") has served as a director of the Company since 2018.

22. Defendant Holly A. Van Deursen ("Van Deursen") has been a director of the Company since 2008.

23. Defendant Philip G. Weaver ("Weaver") has served as a director of the Company since 2005.

24. Defendant George W. Wurtz III ("Wurtz") has served as a director of the Company since 2018.

25. Defendant Robert H. Yanker ("Yanker") has served as a director of the Company since 2018.

26. Defendants referenced in ¶¶ 13 through 25 are collectively referred to as Individual Defendants and/or the Board.

27. Relevant non-party Amcor is an Australian plc, headquartered in Melbourne, Australia. Amcor's stock trades on the Australian Securities Exchange under the ticker symbol "AMC."

28. Relevant non-party New Amcor is a plc incorporated under the laws of the Bailiwick of Jersey.

29. Relevant non-party Merger Sub is a corporation incorporated under the laws of Missouri and a wholly owned subsidiary of New Amcor.

**FURTHER SUBSTANTIVE ALLEGATIONS**

30. On July 12, 2018, the ConnectOne issued a press release announcing the Proposed Transaction. The Press Release read in relevant part:

> MELBOURNE, Australia & NEENAH, Wis.--(BUSINESS WIRE)--Amcor Limited (ASX: AMC) and Bemis Company, Inc. (NYSE: BMS) today

5

announced that their respective Boards of Directors have unanimously approved a definitive agreement under which Amcor will acquire Bemis in an all-stock combination. Combining these two complementary companies will create the global leader in consumer packaging, with the footprint, scale and capabilities to drive significant value for shareholders, offer customers and employees the most compelling value proposition in the packaging industry and deliver the most sustainable innovations for the environment.

The transaction will be effected at a fixed exchange ratio of 5.1 Amcor shares for each Bemis share, resulting in Amcor and Bemis shareholders owning approximately 71% and 29% of the combined company, respectively. This is equivalent to a transaction price of US$57.75 per Bemis share based on Amcor's closing share price of A$15.28 on August 3, 2018, and represents a premium of 25% to Bemis' closing price of US$46.31 per share as of August 2, 2018.

Amcor's CEO, Ron Delia, said: "The strategic rationale for this combination and the financial benefits are highly compelling for both Amcor and Bemis shareholders. We are convinced this is the right deal at the right time for both companies, and with the right structure for both sets of shareholders to participate in a unique value creation opportunity. Amcor identified flexible packaging in the Americas as a key growth priority and this transaction delivers a step change in that region.

"There are an increasing number of opportunities arising for a leading packaging company to capitalize on shifting consumer needs, an evolving customer landscape and the need to provide responsible packaging solutions that protect the environment. With this transaction, Amcor will have a stronger value proposition with the scale, breadth and resources to unlock value from these opportunities, for the benefit of our shareholders, customers and employees.

"Amcor's financial profile will be enhanced, and our existing capital allocation framework, or shareholder value creation model, will be maintained and strengthened with this transaction. The combined company expects to have an investment grade balance sheet that provides immediate capacity for further disciplined investment as well as a compelling, progressive dividend. Amcor will draw on our extensive merger integration experience to deliver the substantial benefits of this combination."

Bemis' President and CEO, William F. Austen, said: "The combination of Bemis and Amcor is transformational, bringing together two highly complementary organizations to create a global leader in consumer packaging. We believe this combination, which is an exciting growth story for both companies, will benefit all stakeholders. Our employees will benefit as part of a larger and more global organization focused on a commitment to customer

service, integrity and supporting strong teams. In addition, the combination will enable us to offer global, regional and local customers the most compelling value proposition in the industry through a broader product portfolio, increased product differentiation and enhanced operating capabilities, while leveraging Bemis' extensive U.S. manufacturing base and strengths in material science and innovation. Our shareholders will receive a significant premium in this transaction, reflecting the value we've built as an organization, as well as the opportunity to continue to participate in the upside potential of a more diversified combined company with greater scale and resources. We look forward to working together with Amcor to ensure a seamless integration."

Amcor's CEO, Ron Delia, concluded, "Amcor and Bemis have many things in common starting with proud histories that date back more than 150 years. Both companies are grounded in strong values, a shared commitment to innovation and value-added consumer packaging, and have talented management teams."

"We have always had a great deal of respect for Bemis and we are thrilled that its team in Wisconsin and around the world will be joining Amcor. Many people at Amcor today have joined us through acquisitions, including many of our leadership team, and we would expect Bemis to be well represented in Amcor at all levels of the organization."

**Strategic Rationale**

After completion of the transaction, Amcor will have a stronger and more differentiated value proposition for global, regional and local customers through:

- **Comprehensive global footprint with more balanced, profitable exposure to emerging markets**: A global flexible packaging footprint across key geographies; a larger, more balanced and more profitable emerging markets business, with sales of some US$3.5 billion from around 30 emerging markets;

- **Greater scale to better serve customers in every region**: Increased economies of scale and resources through Amcor's leading positions in Europe, Asia and Latin America, and Bemis' leading positions in North America and Brazil;

- **Increased exposure to attractive end markets and product segments**: An enhanced growth profile from greater global participation in protein and healthcare packaging, leveraging innovative technologies in barrier films and foils;

- **Best-in-class operating and innovation capabilities**: Greater differentiation to innovate and meet customer demands for new and

sustainable products through the deployment of proven, industry-leading commercial, operational and R&D capabilities;

- **A continued strong commitment to environmental sustainability**: Enhanced capabilities behind Amcor's pledge to develop all recyclable or reusable packaging products by 2025; and

- **Greater depth of management talent**: A stronger combined team by bringing the significant strengths and quality of the workforce across both companies.

**Financial Rationale**

The combination creates substantial value for shareholders of both companies through:

- Compelling transaction metrics:
    - all-stock acquisition at an implied value in line with Amcor's current trading EV/EBITDA multiple, pre cost synergies;
    - pre-tax annual cost synergies of approximately US$180 million (representing approximately 4% to 5% of Bemis sales) by the end of the third year from procurement, manufacturing and G&A efficiencies, incremental to Bemis' "Agility" improvement plan;
    - double digit proforma EPS accretion for all shareholders inclusive of cost synergies at full run rate; and
    - double digit returns in excess of Amcor's Weighted Average Cost of Capital (WACC).
- Stronger financial profile going forward:
    - higher margins through the delivery of cost synergies;
    - potential to grow at higher rates over the long term through a stronger customer value proposition; and increased exposure to attractive segments, which would be additive to the transaction metrics;
    - annual cash flow, after capital expenditure and before dividends, in excess of US$1 billion; and
    - investment grade balance sheet with immediate capacity for further investment.
- Greater liquidity for investors:
    - through a primary listing on the New York Stock Exchange ("NYSE") and a listing on the Australian Securities Exchange ("ASX") via CHESS Depositary Interests ("CDI's"); and
    - expected inclusion in both the US S&P 500 index as well as in the S&P / ASX 200 index.
- Cash and tax free:

8

- cash and tax free transaction for shareholders in a share for share exchange.

**Transaction Structure**

The combination will be effected through a merger of Amcor and Bemis into a newly created holding company ('New Amcor') incorporated in Jersey. It is intended that New Amcor will be tax resident in the UK after closing. New Amcor will have a primary listing on the NYSE and a listing on the ASX. Amcor and Bemis shareholders will receive shares in New Amcor in a tax-free exchange. Existing Amcor shareholders will have the option to receive one New Amcor ASX listed CDI or one New Amcor NYSE listed share for each Amcor share held. Bemis shareholders will receive 5.1 New Amcor NYSE shares for each Bemis share held, resulting in Amcor and Bemis shareholders owning approximately 71% and 29% of the combined company, respectively.

This structure has several key benefits, including:

- Listings on two major global exchanges with primary listing on the NYSE and an ASX listing via CDIs;

- Expected index inclusion in the S&P 500 of the full market capitalization of the combined company (estimated at US$17 billion) and pro-rata inclusion of CDIs in the S&P / ASX 200 index, resulting in greater liquidity and considerably increased index buying; and

- Ongoing financial strength and funding flexibility for continued investment.

**Financial effects**

After completion of the transaction it is expected that key aspects of Amcor's financial profile will remain largely unchanged, including:

- A compelling, progressive dividend which will continue to be an important component of annual shareholder returns;

- Post closing, the first annual dividend paid by New Amcor is expected to be no less than the value of the last annual dividend per share declared by Amcor prior to completion of the transaction, providing significant dividend per share accretion to Bemis shareholders; and

- An on-going capital allocation philosophy consistent with Amcor's shareholder value creation framework.

**Governance and Community**

Upon completion of the transaction, New Amcor's Board is expected to comprise 11 members, 8 of whom are current Amcor directors, and 3 of whom are current Bemis directors. Amcor's current Chairman, Graeme Liebelt and current CEO Ron Delia will continue in those roles after the transaction and Mr. Delia will continue to serve as the only Executive Director on the Board.

New Amcor will continue to maintain a critical presence in Wisconsin and other key Bemis locations. The combined company also expects to leverage Bemis' plant network and innovation center while continuing to invest in the U.S. New Amcor will continue to support the communities in which Bemis operates and announced today a contribution of US$35,000 to the Bemis Foundation on behalf of Amcor's 35,000 employees world-wide.

**Conditions to the Transaction and Other Terms**

Closing of the transaction is conditional upon the receipt of regulatory approvals, approval by both Amcor and Bemis shareholders, and satisfaction of other customary conditions. Subject to the satisfaction of the conditions to closing, the transaction is targeted to close in the first quarter of calendar year 2019.

Under the terms of the transaction agreement, prior to closing each party will be permitted to continue paying dividends in an amount and on timing consistent with past practice.

The full terms of the transaction, including the closing conditions and other terms described herein, are set out in the transaction agreement, which is lodged in a separate announcement.

**The Proxy Misleads Bemis Stockholders by Omitting Material Information**

31.     On March 27, 2019, the Company filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince Bemis stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the background of the Proposed Transaction, Goldman's financial analyses, and the potential conflicts of interest faced by Goldman and the Company's insiders in promoting the Proposed Transaction.

*Material Omissions Concerning the Background of the Proposed Transaction*

32.     The Proxy discloses that Bemis entered into a confidentiality agreement with Party

D during the process leading to the Merger Agreement. However, the Proxy omits whether this agreement is still in effect, whether this agreement contained a standstill provisions, and if so, whether the standstill provision contained a so-called "don't-ask-don't-waive" ("DADW") provision that presently precludes Party D from making a topping bid for the Company

33. Defendants' failure to provide Bemis stockholders with the foregoing material information renders the statements in the *Background of the Merger* section of the Registration Statement false and/or materially misleading.

### *Material Omissions Concerning Goldman's Financial Analyses*

34. The Proxy describes Goldman's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Bemis' stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Bemis' stockholders.

35. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Proxy fails to disclose the perpetuity growth rates implied by the analysis, the inputs and assumptions underlying the discount rates ranging from 6.5% to 7.0%, and a quantification of the net debt and pension underfunding as of June 30, 2018.

36. With respect to Goldman's *DCF – Pro Forma New Amcor Analysis*, the Proxy fails to disclose the perpetuity growth rates implied by the analysis, the inputs and assumptions underlying the discount rates ranging from 6.0% to 7.0%, a quantification of the net debt and pension underfunding as of June 30, 2018 for Bemis, as well as the amounts of debt attributable to

New Amcor, and the specific terminal year estimate of unlevered free cash flow to be generated by the Net Synergies to which perpetuity growth rates were applied.

### *Material Omissions Concerning Potential Conflicts of Interest*

37. Furthermore, the Proxy fails to disclose the conflicts of interest facing Company management throughout the process, and potential conflicts of interest faced by Goldman in preparing its fairness opinion.

38. First, the Proxy states that:

> Amcor has made provisional offers of employment to all Bemis executive officers, other than the chief executive officer or chief financial officer, for employment with New Amcor that have been accepted by these executive officers. These offers provide for annual compensation (base salary, annual cash bonus, long-term incentives and other benefits) that Amcor believes to be commensurate with the roles the executives would assume with New Amcor. These offers preserve the executives' eligibility for the existing retention arrangements and provide for the settlement of the executives' existing Management Agreements in return for comparable payments at or after closing. The offer letters with two executive officers who may experience a Qualifying Event provide for termination of the executive's Management Agreement in exchange for certain payments and potential payments in an aggregate amount that is comparable to the severance benefits that would have been payable upon a Qualifying Event under the Management Agreement before any reduction to avoid an excise tax.
>
> Mr. Austen and Mr. Clauer have entered into consulting arrangements with Amcor (for initial periods of 6-months and 3-months, respectively) pursuant to which they will be available to provide limited transition services, as requested by Amcor.

Proxy at 111.

39. Despite this disclosures, the Proxy omits the financial terms of these offers of employment, including the terms of the consulting arrangements into which defendant Austen and Mr. Clauer entered.

40. The Proxy also omits any negotiations or discussions, and all communications related to post-transaction employment, despite the offers of employment and entry into consulting

12

agreements. These offers and agreements did not arise out of the blue, and the omission of the timing and nature of the communications and negotiations materially mislead Bemis stockholders as to the conflicts of interest faced by Company insiders.

41. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42. Finally, the Proxy omits facts regarding the potential conflicts of interest facing Goldman.

43. The Proxy discloses that Goldman has not been paid by either Amcor or Bemis in the two year period ending August 6, 2018, and that Bemis is permitting Goldman to participate in the potential sale of Amcor or Bemis businesses that they are forced to divest to receive regulatory approval of the Proposed Transaction:

> During the two year period ended August 6, 2018, the Investment Banking Division of Goldman Sachs has not been engaged by Amcor or its affiliates to provide financial advisory or underwriting services for which Goldman Sachs has recognized compensation. Goldman Sachs may also in the future provide financial advisory and/or underwriting services to Bemis, Amcor, New Amcor and their respective affiliates for which the Investment Banking Division of Goldman Sachs may receive compensation. Additionally, in connection with obtaining regulatory approval for the transaction, Amcor and/or Bemis may be required to divest one or more of their respective businesses. As approved by Bemis, Goldman Sachs' Merchant Banking Division, or funds, investment vehicles or other entities managed, sponsored or advised by Goldman Sachs' Merchant Banking Division or in which it may have economic interests may participate in any sale process with respect to such businesses, including potentially bidding on and purchasing one or more of such businesses.

Proxy at 102.

44. However, the Proxy omits (1) whether Amcor or its affiliates engaged Amcor without the receipt of a fee; (2) when Bemis approved the participation of Goldman's Merchant Banking Division in any regulatory-mandated divestment of Amcor or Bemis businesses; and (3) the content and nature of the discussion that led to this approval.

45. These omissions directly impugn the independence of Goldman and materially mislead Bemis' stockholders as to the ability of Goldman to act in the best interest of Bemis and its stockholders when providing financial advice leading up to the Proposed Transaction. By omitting this information, the Proxy permits the inference that Goldman has not performed any services for Amcor or Bemis without any affirmative statement regarding unpaid services. If Goldman has not been engaged by Amcor or Bemis, the Proxy must affirmatively reflect those facts and disclose facts regarding all conflicts of interest faced by Goldman.

46. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Bemis**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Bemis is liable as the issuer of these statements.

65. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of JASO within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Bemis and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the

15

power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: April 23, 2019

Respectfully submitted,

By: /s/ *William Fields*
William Fields
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: wfields@zlk.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
　　　　etripodi@zlk.com

*Attorneys for Plaintiff*

17